J. S18044/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF:  E.C., A MINOR  :    IN THE SUPERIOR COURT OF
                :            PENNSYLVANIA
                :
APPEAL OF:  P.C. NATURAL FATHER  :     No. 1890 WDA 2017

Appeal from the Order Dated November 21, 2017,
in the Court of Common Pleas of Allegheny County
Orphans' Court Division at No. CP-02-AP-0000037-2017

BEFORE:  STABILE, J., MUSMANNO, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED MAY 16, 2018**

P.C. ("Father") appeals from the November 21, 2017 order granting the petition of the Allegheny County Office of Children, Youth and Families ("CYF") to involuntarily terminate the parental rights of Father and A.C. ("Mother")[1] to minor child, E.C. ("Child"), pursuant to 23 Pa.C.S.A. §§ 2511(a)(5), (8), and (b).  After careful review, we affirm.

The trial court summarized the relevant facts and procedural history of this case as follows:

> [CYF] has been involved with the family in question since November 2013 when Child's elder but still minor sibling, L.C. ("Sibling") was born and tested positive for cocaine.  In a separate but relevant action, on April 12, 2016[,] CYF filed a petition for the termination of Father's parental rights to Sibling. On September 23, 2016, following a hearing on the petition, the Court entered an order terminating the parental rights of Father to Sibling. Father made a

---

[1] Mother has not appealed from the order terminating her parental rights to E.C. and is not a party to this appeal.

timely appeal and the Pennsylvania Superior Court affirmed this court's Order. *See In re L.C.*, 160 A.3d 271 ([Pa.Super.] 2017).

Child was born [in November] 2015 addicted to methadone and opiates for which Mother was not prescribed. Child subsequently was hospitalized in a newborn intensive care unit ("NICU") for four (4) weeks to undergo withdrawal treatment. On December 31, 2015, CYF was granted an emergency custody authorization for Child and he has been removed from [Father's and Mother's] care since.

On January 12, 2016, KidsVoice was appointed [g]uardian *ad litem* ("GAL") for Child for dependency proceedings. Child was adjudicated dependent on March 15, 2016 and CYF was given supervision with permission to place the Child. The initial placement goal for Child was to return him to his parents with a concurrent goal of adoption.

Since Child was adjudicated dependent, multiple Permanency Review Hearings were held. The Court consistently found that Father was not making progress toward his family plan goals and was never more than minimally compliant. On October 3, 2016 following a Permanency Review Hearing the Court found that Father had been minimally compliant with the permanency plan and had made no progress toward alleviating the circumstances [that] necessitated the original placement. Despite these findings, the Court's primary placement goal continued to be reunification of Child with Parents with a concurrent goal of adoption.

On January 27, 2017[,] the Court found that aggravated circumstances existed against Father when the Court terminated his parental rights to Sibling on September 23, 2016. Further efforts were not ordered to preserve the family and reunify Child with Parents. CYF then filed a Petition for Termination of Parental Rights on March 15, 2017. CYF averred that they delivered true and correct copies of the Petition and Notice of Hearing on

> March 23, 2017 at 5:27 p.m. Father denied that CYF's [] service ever occurred, averring that Mother was given his copies of the Petition and Notice of Hearing. Father accepted Personal Service at the Termination of Parental Rights hearing dated May 12, 2017.
>
> Following yet another Permanency Review Hearing, on May 12, 2017[,] the Court found that Father continued to show no progress toward alleviating his circumstances which created the original placement. The Court ordered that the new permanent placement goal be Adoption. On July 28, 2017[,] the Court ordered that KidsVoice be appointed [as] legal counsel for Child for all adoption proceedings, including the termination of parental rights hearing.

Trial court opinion, 1/18/18 at 1-3 (internal quotation marks and some citations omitted).

On August 18, 2017, the trial court scheduled a termination hearing that was ultimately continued until November 17, 2017. At the November 17, 2017 hearing, the trial court heard testimony from the following individuals: Father; Mother; CYF caseworker Amber Saunders; Dr. Neil Rosenblum, a court-appointed clinical psychologist who evaluated, *inter alia*, Father and Child; and Allison Hamilton, a caseworker from A Second Chance foster care agency. Following the hearing, the trial court entered orders on November 21, 2017 involuntarily terminating Father's and Mother's parental rights to Child, pursuant to Sections 2511(a)(5), (8), and (b). On December 19, 2017, Father filed a timely notice of appeal to this court. That same day, Father filed a concise statement of errors complained

of on appeal, in accordance with Pa.R.A.P. 1925(b). On January 18, 2018, the trial court filed its Rule 1925(a) opinion.

Father raises the following issues for our review:

1.  Did the trial court abuse its discretion and/or err as a matter of law in appointing KidsVoice as counsel for the Child when an apparent conflict between the legal interests of the Child and the interest of KidsVoice in representing the best interests of the Child in the underlying dependency proceedings was raised by [Father]?

2.  Did the trial court abuse its discretion and/or err as a matter of law in concluding that termination of [Father's] parental rights would serve the needs and welfare of the Child pursuant to 23 Pa.C.S.[A.] §2511(b)?

Father's brief at 6.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. [A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

- 4 -

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and internal quotation marks omitted). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

Father first argues that the trial court abused its discretion and/or erred as a matter of law in appointing KidsVoice as legal counsel for Child in these contested termination proceedings when KidsVoice was already serving as GAL for the Child in the underlying dependency proceedings. (Father's brief at 15.) Father maintains that an inherent conflict between Child's legal and best interests precludes a GAL in dependency proceedings from serving as Child's legal counsel in contested, termination proceedings. (*Id.* at 18-23.) We disagree.

Our supreme court recently held in a plurality decision in *In re Adoption of L.B.M.*, 161 A.3d 172 (Pa. 2017), that 23 Pa.C.S.A. § 2313(a) requires a trial court to appoint counsel for a child in contested involuntary termination of parental rights proceedings and the failure to do so can never be harmless. *In re Adoption of L.B.M.*, 161 A.3d at 180, 183. This decision was originally filed on March 28, 2017, but was corrected

and replaced on May 23, 2017. Authoring Justice Wecht, joined by Justices Donohue and Dougherty, sought to hold that a trial court is required to appoint separate, independent counsel to represent a child's legal interests even when the GAL is an attorney. However, Chief Justice Saylor, and Justices Baer, Todd, and Mundy, disagreed in different concurring and dissenting opinions with that part of the lead opinion's holding. Specifically, while the majority of the justices agreed that the appointment of counsel for the child is required in all involuntary termination proceedings and that the failure to do so by the trial court is structural error, they did not join that part of Justice Wecht's opinion which sought to hold that the GAL may never serve as counsel for the child. Rather, such separate representation would be required *only if* Child's best interests and legal interests were in conflict. *See In re D.L.B.*, 166 A.3d 322, 329 (Pa.Super. 2017) (interpreting the supreme court's decision in *In re Adoption of L.B.M.* to require separate representation "only if the child's best interests and legal interests were somehow in conflict").

Here, no such conflict exists. Our review of the record reveals that Child's best interests and legal interests were unquestionably well represented by KidsVoice and never in conflict. Father has failed to demonstrate how Child's best interests and legal interests were not represented by KidsVoice and has also failed to identify a conflict between those interests. Rather, Father invites us to reverse our opinion in *In re*

***D.L.B.***, which we decline to do. Accordingly, we discern no abuse of discretion and/or legal error on the part of the trial court in appointing KidsVoice, the dependency GAL, to serve as Child's legal counsel in the contested termination proceedings.

Father next argues that "the trial court abused its discretion and/or erred as a matter of law in concluding that termination of [] Father's parental rights would serve the needs and welfare of the Child pursuant to [Section] 2511(b)." (Father's brief at 24.)

The termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined "clear and convincing evidence" as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (citation and quotation marks omitted).

In this case, the trial court terminated Father's parental rights pursuant to Sections 2511(a)(5), (8), and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . . .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

. . . .

> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

. . . .

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(5), (8), and (b). We need only agree with the trial court as to any one subsection of Section 2511(a), in addition to Section 2511(b), to affirm an order terminating parental rights. *In re M.M.*, 106 A.3d 114, 117 (Pa.Super. 2014).

Although not specifically challenged by Father, we begin our analysis of the trial court's decision to terminate his parental rights by addressing

Section 2511(a)(8). To meet the requirements of Section 2511(a)(8), CYF must satisfy the following three-part test: "(1) that the child has been removed from the care of the parent for at least twelve (12) months; (2) that the conditions which had led to the removal or placement of the child still exist; and (3) that termination of parental rights would best serve the needs and welfare of the child." *In re C.L.G.*, 956 A.2d 999, 1005 (Pa.Super. 2008) (citation and internal quotation marks omitted).

Upon review, we find that there was clear and convincing evidence to support the trial court's termination of Father's parental rights to Child, pursuant to Section 2511(a)(8). The record establishes that Child was born addicted to both methadone and opiates and has resided in his pre-adoptive foster home since December 31, 2015, following completion of a four-week treatment program in the NICU immediately following his birth. (Notes of testimony, 11/17/17 at 8-9, 29.) At the time of the November 17, 2017 termination hearing, Child had been removed from Father's care for over 23 months, nearly his entire life. (*Id.*) Furthermore, as it relates to the continued existence of the conditions that predicated Child's removal, the record demonstrates that Father remains unable to provide essential parental care. The testimony of CYF caseworker Saunders demonstrates Father's repeated failure to remedy his substance abuse issues or regularly visit Child. The trial court summarized Saunders' testimony, in pertinent part, as follows:

Aside from securing allegedly stable and appropriate housing more than a year after the initial dependency proceedings for Child, Saunders testified that Father otherwise failed CYF's goals and never went above minimal compliance. . . .

. . . .

Father failed to meet his drug and alcohol goals. Of the sixty-nine (69) total urine analysis screenings that Father was called for, he attended only twenty (20) and missed forty-nine (49). Of the twenty (20) attended drug screens, fifteen (15) of them were attended between the March 10, 2017 psychological evaluation and November 17, 2017.

CYF requested Father to attend hair follicle test, which would have shown Father's drug history for the previous three (3) months. Father did not comply.

. . . .

Regarding Father's different drug and alcohol treatment programs, Saunders testified . . . . Father began Suboxone treatment in November 2015 at Recovery Solutions. Father then continued Suboxone treatment at Freedom Healthcare in October 2016. Saunders further testified that Father was discharged from inpatient drug treatment at Freedom Healthcare in November of 2016 due to a drug relapse. Father reported to CYF that he had re-engaged another inpatient drug treatment program in January 2017 at Magnolia Networks, but CYF never received confirmation of it.

Father failed to [comply with] scheduled visitations in accord with his family plan goals. Supervised visits were scheduled by CYF for Father and supervised by the foster care organization, A Second Chance. Father initially was allowed supervised visits with Child three (3) times a week, but by March 2016 due to Father's nonattendance the visits were reduced to twice weekly. By the time of the June 28,

2016 hearing Father had only attended eight (8) out of twenty-five (25) scheduled visits. Following the June 28, 2016 hearing Father's visits were reduced to once per week. Saunders testified that of the total one-hundred and eighteen (118) scheduled visits, Father attended sixty-five (65) of them and missed fifty-three (53). Saunders further testified that despite transportation and scheduling issues that caused Child to occasionally miss visits at no fault of Father's, the fifty-three missed visits [] were in reference specifically to times that Father failed to attend when Child was present. The visits were occasionally scheduled at Saunders' office but were eventually held in another office. CYF was notified by Father that his work schedule conflicted with visitations. In response CYF promptly arranged for evening visits from 5:30 p.m. to 7:00 p.m. to accommodate for Father's work schedule.

Trial court opinion, 1/18/18 at 5-7 (citations and footnote omitted).

Next, we consider whether termination would best serve the needs and welfare of Child, as required under the third prong of Section 2511(a)(8), and whether it was ultimately proper under Section 2511(b). With regard to Section 2511(b), our supreme court has stated as follows:

[I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include [i]ntangibles such as love, comfort, security, and stability. . . . [T]his Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. However, as discussed below, evaluation of a child's bonds is not always an easy task.

***In re T.S.M.***, 71 A.3d at 267 (internal case citations omitted).

In concluding that the termination of Father's parental rights best served the needs and welfare of Child, the trial court concluded that the testimony of Dr. Rosenblum clearly established that no substantial emotional bond existed between Father and Child. The trial court stated as follows:

> Based on the combination of Dr. Rosenblum's observations and CYF's testimony regarding Father's nonattendance of visitations, the Court determined that Child had developed a significant emotional bond with the foster parents and not with Mother or Father. . . .
>
> . . . .
>
> This finding was partly based upon Dr. Rosenblum's testimony that Child recognized Father as a familiar and safe face but not a primary caregiver. Dr. Rosenblum further testified that Child's bond with Father was not so necessary or sufficient that it would result in emotional harm to Child. The Court also carefully considered Dr. Rosenblum's testimony that if Father was continuing his historic pattern of drug screen and visitation nonattendance (as CYF testified to) then it would be evident that [Father was] not demonstrating a capability to care for Child.
>
> . . . .
>
> . . . . CYF's testimony of Father not attending visitations was highly significant in the Court's bonding analysis. CYF testified that Father failed to attend nearly half of all scheduled visitations. Father's historic nonattendance at visits with Child was yet another signal to the Court that Father was not making efforts to maintain a close relationship with Child. While Father alleged that virtually all missed visits were not his fault, and while he blamed CYF and A Second Chance for missed visitations, the

- 13 -

> Court however did not find his testimony to be credible or his arguments to be proven. The Court, therefore, determined that Child's recognition of Father could be classified as a lesser type of bond, and not a crucial emotional bond worth saving out of fear of irreparable harm to Child.
>
> The simple reality is that Father has not been present in Child's life enough for a relationship worth saving to have formed. Accordingly, the Court found that Child did not have a significant bond with Father such that Child would be inflicted with emotional pain if parental rights were terminated.

Trial court opinion, 1/18/18 at 16-17 (citations and internal quotation marks omitted). The record supports these conclusions by clear and convincing evidence.

This court has continually recognized that "in cases where there is no evidence of a bond between a parent and child," as is the case here, "it is reasonable to infer that no bond exists." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa.Super. 2010) (citations omitted). In reaching this conclusion, we emphasize that "[a] child's life, happiness and vitality simply cannot be put on hold until the parent finds it convenient to perform parental duties." *In the Matter of the Adoption of A.M.B.*, 812 A.2d 659, 675 (Pa.Super. 2002). Our standard of review requires us to accept the trial court's findings of fact and credibility determinations where, as here, they are supported by the record. *See In re T.S.M.*, 71 A.3d at 267. Accordingly, we decline to reweigh the evidence and reassess witness credibility, as Father repeatedly asserts that we should do.

Based on the foregoing, we conclude that the trial court did not abuse its discretion by involuntarily terminating Father's parental rights to Child pursuant to Section 2511(a)(8) and (b). Accordingly, we affirm the November 21, 2017 order of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/16/2018

- 15 -